1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                          OAKLAND DIVISION

9

10   ELGIN COX,                              Case No:  C 12-5880 SBA

11              Plaintiff,                   **ORDER ON CROSS-MOTIONS**
                                             **FOR SUMMARY JUDGMENT**
12         vs.
                                             Dkt. 71, 72, 77, 90
13   ALLIN CORPORATION PLAN and UNUM
     LIFE INSURANCE COMPANY OF
14   AMERICA, et al.,

15              Defendants.

16

17

18        Plaintiff Elgin Cox ("Plaintiff"), formerly an employee of Allin Consulting of

19   California ("Allin Consulting"), brings the instant action under the Employee Retirement

20   Income Security Act ("ERISA"), 29 U.S.C. § 1132, to challenge the denial of his claim for

21   long-term disability ("LTD") benefits under the Allin Corporation Plan ("Allin Plan") and

22   the Dell, Inc. Comprehensive Welfare Benefits Plan ("Dell Plan").  As Defendants, he has

23   named the Allin Plan, the Dell Plan and the Dell, Inc. Administration and Investment

24   Committee Dell Corporation (collectively "Dell Defendants"), as well as their respective

25   plan insurers/administrators, Unum Life Insurance Company of America ("Unum") and

26   Aetna Life Insurance Company ("Aetna"), respectively.  The Court previously dismissed

27   the Dell Defendants from the action.

28

The parties are presently before the Court on cross-motions for summary judgment filed by the Unum and the Allin Plan (collectively "Unum"), Aetna, and Plaintiff.[1]  Having read and considered the parties' briefs and reviewed the record, the Court partially GRANTS Plaintiff motion, GRANTS Aetna's motion and DENIES Unum's motion.  The Court remands the matter to the plan administrator to reevaluate Plaintiff's claim for LTD benefits consistent with this Order.  The remand order shall be held in abeyance pending the parties' participation in a mandatory settlement conference.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.    BACKGROUND

### A.    OVERVIEW

Plaintiff was employed by Allin Consulting, a Pennsylvania based, wholly-owned subsidiary of Allin Corporation (collectively "Allin"), as a computer web developer.  As part of his employment, Plaintiff was covered by the Allin Plan, which provides for both basic benefits and supplemental "Disability Plus" benefits in the event of disability.  The Allin Plan is administered by Unum.

On September 7, 2010, Plaintiff submitted a LTD benefits claim to Unum, claiming disability as of November 6, 2008, due to vertigo and dizziness.  Unum initially paid benefits to Plaintiff, but terminated them after twenty-four months under the Policy's "Self-Reported Symptoms" limitation ("self-reported limitation").  That limitation provides that disability benefits will not be paid beyond twenty-four months for self-reported conditions that are "not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine."

---

[1] Although Plaintiff and Unum filed motions for judgment under Federal Rule of Civil Procedure 52, as will be discussed below, the Court finds that the motions are more appropriately construed under Rule 56.

After Dell Corporation ("Dell") acquired Allin in 2009, Plaintiff submitted an application for LTD benefits under the Dell Plan, which is insured and administered by Aetna.  Aetna denied Plaintiff's claim, both initially and on appeal.

### B.   MEDICAL HISTORY

On November 6, 2008, Plaintiff was seen by Dr. Benjamin M. Loos, an otolaryngologist (also known as an "ear, nose and throat" specialist or ENT), in response to complaints of "left greater than right tinnitus as well as vertigo."  AR 445.  Dr. Loos noted that Plaintiff exhibited mild to moderate high frequency hearing loss in the left ear and showed mild subjective disequilibrium in response to the Dix-Hallpike maneuver.  Id.[2]  He diagnosed Plaintiff with "[l]eft greater than right tinnitus associated with left side high frequency sensorineural hearing loss" and "significant asymmetry" warranting MRI imaging.  Id.  Although Dr. Loos did not find signs of "positional vertigo," he recommended treatment for "possible atypical Meniere's disease. . . ."  Id.[3]

On December 26, 2008, Plaintiff was seen by Dr. Randall R. Starkey, a neurologist, who noted that Plaintiff's recent evaluations "have not been revealing," though he believed that Plaintiff's "recurrent vertigo is very likely of labyrinthine origin . . . ."  AR 494.[4]  He recommended a neurotology evaluation, including a brain MRI.  Id.

On February 25, 2009, Plaintiff was seen by Dr. Steven Kmucha, an ENT, at the California Ear Institute.  AR 1188.  He noted Plaintiff's history of migraine headaches,

---

[2] Dix-Hallpike maneuver is defined as: a "[t]est for eliciting paroxysmal vertigo and nystagmus in which the patient is brought from the sitting to the supine position with the head hanging over the examining table and turned to the right or left; vertigo and nystagmus are elicited when the head is rotated toward the affected ear." STEDMAN'S MED. DICTIONARY 1050 (28th ed. 2006) (emphasis added).  Nystagmus refers to "involuntary rhythmic oscillation of the eyeballs, either pendular or with a slow and fast component." Id. 1350.  The Court may take judicial notice of medical dictionary definitions.  See Tuman-Kent v. Merit. Sys. Protection Bd., 657 F.3d 1280, 1290 (Fed. Cir. 2011).

[3] Meniere's disease is "an affection characterized clinically by vertigo, nausea, vomiting, tinnitus, and fluctuating and progressive sensory loss associated with endolmphatic hydrops." STEDMAN'S MED. DICTIONARY 561 (28th ed. 2006).

[4] "Labyrinthine" refers to the inner ear structure. STEDMAN'S MED. DICTIONARY 1038 (28th ed. 2006).

anxiety disorder, claustrophobia, and sudden onset vertigo, and a family history of significant cardiovascular and cerebrovascular (i.e., blood circulation to the brain) disease. Id.  Dr. Kmucha also reported that prior audiometric tests documented mild high frequency loss in his left ear.  Id.  A physical examination of Plaintiff's ear and pneumatic otoscopy and tuning fork tests were normal.  Id.  Due to Dr. Kmucha's difficulty in determining whether Plaintiff had cerebrovascular disease or a separate otologic (ear-related) cause of his symptoms, he recommended that Plaintiff undergo VNG (videonysagmograthy and posturography) testing to evaluate his central motor functions.  AR 1188-89.

On March 17, 2009, Plaintiff underwent VNG testing.  AR 1192-1208.  The following day, Dr. Kmucha reviewed the test results.  AR 1190.  He noted that audiometric testing "documented mild high frequency sensory hearing loss in the left ear."  Id.  VNG testing revealed "mild unilateral weakness of the right peripheral labyrinth," though at a level "generally considered clinically insignificant."  Id.

On April 10, 2009, Plaintiff saw Dr. Ben Sadoff to review lab tests performed in connection with his complaints of vertigo, visual changes, and memory loss.  AR 490.  Dr. Sadoff noted "some lab abnormalities," including abnormal lipids and elevated CRP (C-reactive protein).  Id.  He confirmed Plaintiff's continuing complaints, but commented that that "[s]tudies up to this point are fairly unremarkable."  Id.

On April 15, 2009, Plaintiff consulted with Dr. Michael Nelson, a neurologist.  AR 523.  In his report, Dr. Nelson concluded as follows:  "The patient is a 45 year old male who presents with vertigo.  He has a mild response to Diamox.  I feel that he has [M]eniere's disease."  AR 524.  Dr. Nelson, however, did not elaborate on what led him to that possible diagnosis.  Id.

On April 22, 2009, Plaintiff underwent a CT angiogram of his head and neck, which disclosed no abnormalities and was unremarkable.  AR 391.

On July 7, 2009, Dr. Richard A. Cuneo, neurologist at UCSF Medical Center ("UCSF"), saw Plaintiff (then forty-five years-old) upon a referral by Dr. Nelson, for a one hour and forty-five minute consultation.  AR 886.  In his report, Dr. Cuneo noted that

during his twenties, Plaintiff worked for thirteen years as a sound programmer for a rock band, and was regularly exposed to loud volumes, particularly in his left ear, which faced the sound monitors. Id. About three to four years prior to the exam, Plaintiff began experiencing left tinnitus along with experiences of vertigo. Id. Over time, the vertigo increased in frequency and duration. AR 887. Plaintiff also reported the onset of headaches and decreased cognitive function. Id.

Dr. Cuneo's neurologic exam results were "essentially normal." AR 889. Plaintiff's blood work appeared normal and an MRI performed on January 30, 2009, was "unremarkable." AR 891. He ultimately concluded that Plaintiff's case was "complex" and that there were "several definite operative factors and several others that were in contention." AR 890. He stated, among other things:

> On the one hand, he has a 3-year history now of continuous left tinnitus though apparently no striking fluctuation in hearing. He was evolved progressively [to] more frequent episodes of vertigo making the picture somewhat consistent with Meniere's disease, as you noted. On the other hand, he has multiple migraine markers and has evolved a pattern of severe frequent headaches, which he states he has not really explored with you. This brings up whether vestibular migraine may play a contributory role.

> In addition to the above, the patient describes to having considerable memory loss and in fact is embarking on a disability lawsuit presumably related not only to the episodes of vertigo but also to the cognitive dysfunction. As noted, there are discrepancies in the mental status testing, and I am suspicious that depression is playing a primary role.

AR 890 (emphasis added). He recommended that Plaintiff undergo an evaluation by another ENT at UCSF and neurological testing. AR 890-91.

On October 29, 2009, Plaintiff was seen by Sheri Scarborough, Ph.D., at the John Muir Medical Center, upon a referral for a neuropsychological assessment. Aetna 463. Dr. Scarborough reported that Plaintiff first experienced vertigo in 2006, which became progressively worse in 2007 and 2008. Id. In September 2008, he experienced an abrupt onset of vertigo while driving, which caused him to travel across four lanes of traffic until he reached the side of the road. Id. Plaintiff reported he was unable to work due to his

condition, including slowed cognitive processing and memory problems, and continuing

vertigo.  Id.

Dr. Scarborough performed a "comprehensive Neuropsychological test battery,"

which showed below average performance in a number of domains.  Aetna 465.  She

summarized her findings as follows:

> Neuropsychological evaluation reveals mildly impaired visual attention and low average auditory attention, below average psychomotor test speed process, below average new learning and visual learning with low average psychomotor test speed processing, [and] below average delayed visual and verbal recall.  The pattern of his memory test performance indicated slow and inefficient new learning and he benefitted from multiple new learning trials and memory cues to help him retrieve information over time periods.  Mr. Cox is endorsing symptoms of mild depression.  Test results Mild Cognitive Impairment with history of ADHD, stress, depression, and possible slight white matter disease changes as possible contributing factors to his mild concentration and memory difficulties.

Aetna 464.

On November 23, 2009, Plaintiff was seen by Payal Anand, Au.D, an audiologist at

the UCSF Balance Assessment Unit in the Division of Audiology.  AR 513.  He reported

that a prior testing revealed mild low-frequency hearing loss in both ears, mild high-

frequency loss in his right ear, and mild to moderate sensorineural high frequency loss in

the left ear.  Id.  Vestibular screening resulted in mild dizziness and disorientation.  Id.  All

"vision denied conditions" (i.e., where the eyes covered) resulted in Plaintiff falling over.

Id.  Plaintiff failed the Dix-Hallpike maneuver and test results showed "abnormal fixation

suppression with caloric nystagmus" which was "suggestive of a central vestibular

dysfunction."  Id.  The test results were then forwarded to Dr. Lawrence R. Lundig, M.D.,

an ENT.  AR 514.

Plaintiff saw Dr. Lundig on November 29, 2009.  AR 884.  Though he did not

discuss the audiologist's report, Dr. Lundig conducted a vestibular examination and testing,

which were, for the most part, unremarkable.  Id.  However, he did observe that Plaintiff

showed an "abnormal fixation suppression with caloric nystagmus [which was] suggestive of central vestibular dysfunction."  Id.[5]

On June 4, 2010, Raul Romea, M.D., a rheumatologist, saw Plaintiff due to his positive response to rheumatoid factors.  AR 212.  Plaintiff showed difficulty with tandem walking and Romberg's balancing test.  AR 213.[6]  Dr. Romea diagnosed Plaintiff with vertigo but noted that its etiology is "unknown."  AR 214.

On August 30, 2010, Plaintiff was seen by Michael Johnson, LCSW, for a Behavioral Health Follow-Up.  AR 804.  Mr. Johnson noted that Plaintiff was off his meds and has "good and bad days," and was "following up on [his] lawsuit w/Dell and old company."  Id.  Plaintiff reported that he "accepts [his] health as is," and with no diagnosis and no treatment.  Id.

On September 15, 2010, Plaintiff was seen by Kanwardeep Grewal, M.D., a neurologist, in response to a "chief complaint of dizziness."  AR 206.  Plaintiff reported a history of migraine headaches along with memory problems.  Id.  The results of his examination were largely unremarkable, though Dr. Grewal found that the Dix-Hallpike maneuver "was positive in causing his vertigo, was better in about a minute, no nausea but there was horizontal nystagmus to the right which was fatiguable."  AR 209.

## C.   SOCIAL SECURITY DISABILITY BENEFITS

Meanwhile, in 2009, Plaintiff applied for Social Security disability benefits through the Social Security Administration ("SSA"), which initially denied the claim on December 16, 2010.  AR 1252.  Plaintiff appealed, and on December 22, 2010, an SSA Administrative Law Judge ("ALJ") ruled in Plaintiff's favor, based on "the following severe impairment:

---

[5] As noted, nystagmus refers to "involuntary rhythmic oscillation of the eyeballs, either pendular or with a slow and fast component."  STEDMAN'S MED. DICTIONARY 1350 (28th ed. 2006).  Caloric nystagmus involves "fast and slow components induced by labyrinthine stimulation with warm or cool water in the ear."  Id.

[6] A Romberg test is used to test an individual's postural and balancing sense.  THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 1752 (18th ed. 2006).

vertigo with hearing loss." AR 814 (emphasis added). In reaching that decision, the ALJ explained:

> The claimant's impairments meet listing 2.07, disturbance of labyrinthine-vestibular function. This listing is characterized by a history of frequent attacks of balance disturbance, tinnitus and progressive loss of hearing. In order to meet the listing, the medical record must exhibit the following: (a) disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and (b) hearing loss established by audiometry.
>
> In the instant case, the claimant displays the characteristics in listing 2.07 because he has a history of frequent attacks of balance disturbance, tinnitus and progressive loss of hearing. Medical records indicate the claimant's onset of vertigo began in approximately 2007. At that time, the claimant began to experience a ringing in his left ear. The ringing gradually became more constant with bouts of dizziness. Subsequent records show the claimant developed a disturbance in balance. By November 2008, the claimant was experiencing vertigo at the rate of one time per month. Records indicate that the symptoms of vertigo upset his ability to drive and function in daily activities. In April 2009, updated records note that the claimant had 'constant' ringing in his ears with left ear hearing loss. His physical examination was positive for hearing loss and tinnitus, along with diploplia. Due to the constant nature of his symptoms, the claimant was unable to work or complete some household tasks. A functional assessment in May, 2010 indicated unsteady gait and severe vertigo (Medical Records of Dr. Michael J. Nelson, Neurological Medical Group). The records indicate the claimant has shown all characteristics contemplated to meet listing 2.07.
>
> Furthermore, the claimant demonstrated the clinical findings depicted in listing 2.07. Medical records indicate both (a) disturbed function of vestibular labyrinth demonstrated by vestibular tests; and (b) hearing loss established by audiometry. In February 2009, the California Ear Institute indicated that videonystagmography testing documented mild unilateral weakness of the right peripheral labyrinth. At that time audiometric tests documented a mild high-frequency unilateral sensory type hearing loss in the left ear (Medical Records of California Ear Institute). Clinical test findings were confirmed in November 2009 when the claimant sought a consultation with UCSF Medical Center. Examining physicians noted that on vestibular examination, the claimant had abnormal fixation suppression with caloric nystagmus, suggestive of central vestibular dysfunction. A review of the systems was also notable for hearing loss. (Medical Records of UCSF Medical Center). The claimant has therefore satisfied both clinical finding requirements of listing 2.07, as set forth above.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity,

persistence and limiting effects of these symptoms are generally credible.

AR 816-17 (emphasis added).

### A.   CLAIM SUBMISSION

On September 7, 2010, Plaintiff submitted a claim to Unum which alleged that he has been disabled since November 6, 2008, due to undiagnosed vertigo and dizziness. AR 67.  On or about October 6, 2010, Plaintiff provided Unum with an Attending Physician's Statement ("APS") from Michael Duffy, a Physician's Assistant, which stated that Plaintiff was suffering from "frequent debilitating episodes of vertigo/disequilibrium." AR 111.  He also indicated that Plaintiff's condition was chronic and there was no expectation of him returning to work.  AR 112.

### B.   INITIAL APPROVAL OF CLAIM

On February 17, 2011, Unum contacted Plaintiff to notify him that Unum had approved the payment of benefits for twenty-four months based upon his reported symptoms.  AR 1448.  Unum explained to Plaintiff that there did not appear to be a "definitive etiology for his symptoms," and that the twenty-four month self-reported limitation may apply, subject to further investigation.  Id.  The Plan defines self-reported symptoms as follows:

> **SELF-REPORTED SYMPTOMS** means the manifestation of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

AR 157 (emphasis added).

On February 23, 2011, Unum confirmed the above in a written letter to Plaintiff. AR 1479.  Unum sent Plaintiff another letter on March 7, 2011, advising him that future payments would be made under a reservation of rights until Unum determined whether the twenty-four month self-reported limitation applied.  AR 1479.

1

C.    REVIEW AND DENIAL OF PLAINTIFF'S CLAIM

2     Unum began its review of Plaintiff's claim through referrals to Edward Collins,

3 M.D., a neurologist, and D. Malcom Spica, Ph.D., a clinical neuropsychologist.  AR 1516-

4 1520, AR 1523-241.  Dr. Collins acknowledged that Plaintiff was consistent in his reports

5 of vertigo, but that "there was no consensus among the providers on a unifying or single

6 diagnosis which could account for the claimant's reported symptoms."  AR 1519.  He

7 added that "the findings on physical examination and other diagnostic tests failed to

8 confirm the presence of abnormalities which would support the claimant's reported

9 symptoms."  Id.

10    Dr. Spica, upon reviewing the raw data from Dr. Scarborough, concurred that

11 Plaintiff showed "mildly impaired visual attention-concentration," but felt that this

12 weakness was "inconsistent" in light of other test results.  AR 1524.  As to other domains

13 mentioned in Dr. Scarborough's report, Dr. Spica opined that all were "entirely within

14 normal limits" and "not consistent with the debilitating cognitive disorder."  Id.  Ultimately,

15 Dr. Spica concluded that the etiology of Plaintiff's reported cognitive issues was

16 unsubstantiated.  AR 1525.

17    On April 13, 2011, Unum notified Plaintiff of its final decision to deny payment of

18 any further benefits, based on the twenty-four month self-reported limitation.  AR 1532-39.

19 Unum also denied Plaintiff's separate claim for supplemental Disability Plus benefits.  Id.

20 Unum explained that "given the lack of any definitive diagnosis and the self-reported

21 nature of his symptoms, the self-report[ed] limitation in the policy is applicable to this

22 claim, retroactive to the benefit begin date of February 4, 2009."  AR 1534.  In addition to

23 discussing the results of its independent review of Plaintiff's medical records, Unum briefly

24 acknowledged that its decision was inconsistent with the SSA's.  Id.

25

D.    APPEAL OF UNUM'S DECISION

26    On November 4, 2011, Plaintiff appealed Unum's decision, arguing that (1) the

27 policy does not require a definitive diagnosis of a disability after twenty-four months,

28 (2) the self-reported limitation is unenforceable in California, and (3) objective evidence

1    supports Plaintiff's disability.  AR 3363-66.  Plaintiff submitted a neuropsychological

2    testing report by Dr. Sheila Bastien, Ph.D., prepared on or about September 26, 2011.  AR

3    1589-1604.  Dr. Bastien indicated that Plaintiff's results on the Weschler Adult Intelligence

4    Scale show a precipitous decline in Plaintiff's IQ, which she opined showed a

5    "deterioration in intellectual functioning."  AR 1596, 1603, 3311.

6          On December 7, 2011, Plaintiff provided a medical report from Dr. Paul F. Shea, an

7    ENT.  AR 3302.  Dr. Shea diagnosed Plaintiff with "Likely Meniere's Disease (Left),"

8    "Sensorineural Hearing Loss (Bilateral) (Left)," and "Disequilibrium (Dizziness)."  AR

9    3302.  He opined that "[Plaintiff] seems to have mild Meniere's on the left side" and

10   recommended "a course of Meniere's for now and vestibular rehab."  AR 3302.  He

11   recommended that Plaintiff follow a low sodium and low caffeine diet along with a follow

12   up visit in six weeks, though there is no indication a follow up examination transpired.  Id.

13         On December 13, 2011, Plaintiff was examined by Dr. Joel Schenker, a neurologist

14   with the University of Missouri.  AR 3350.  Dr. Schenker stated that he "did not know

15   why" Plaintiff was having cognitive difficulties or the source of his vestibulopathy.  Id.

16   He also stated that "it was going to be hard to establish the cause of [Plaintiff's] problems"

17   because "the complaints are largely subjective and difficult[] to establish objectively."  AR

18   3352.  With regard to Plaintiff's vertigo, Dr. Schenker opined that it was not caused by any

19   brain abnormality, and that it could perhaps be related to an issue with his ear or ears and

20   "may be Meniere's."  Id.

21         In addition to the above, Plaintiff's wife, Margaret Noble, submitted notes regarding

22   his condition.  The first note, dated November 3, 2011, states that Plaintiff has vertigo

23   attacks several times a day and has at least five major attacks per week, and now uses a

24   walker in public, and is prone to falling when he does not use the walker.  AR 1605.  She

25   added that "his memory is getting worse."  Id.  In a second note, dated February 22, 2012,

26   Ms. Noble indicated that Plaintiff's incidents of vertigo and memory loss remained

27   frequent.  AR 3382.

28

On March 23, 2012, Unum issued its decision denying Plaintiff's appeal.  AR 3449-3456.  Unum justified its decision as follows:

> While our medical reviews question the etiology of Mr. Cox's reported symptoms and document that he does not have any cognitive deficits per the neuropsychological testing, review of the medical information does suggest that your client has been consistent in his presentation and reports of symptoms over time to multiple providers.  We do not have any evidence to support that he has not experienced the symptoms of vertigo at a frequency and severity to preclude sustained functional capacity.  However, given the lack of any definitive diagnosis and the self-reported nature of his symptoms, the self-report limitation in the policy is applicable to the claim retroactive to the benefit begin date of February 4, 2009. The policy limits benefits to 24 months for self-reported conditions.

AR 1534.  Plaintiff then submitted a LTD benefits claim to Aetna under the terms of the Dell Plan, which was denied initially and on appeal.

On November 16, 2012, Plaintiff filed the instant action against the Allin Plan, Unum, the Dell Defendants and Aetna.  Dkt. 1.  On May 1, 2013, the Court granted the Dell Defendants' motion to dismiss with prejudice.  Dkt. 48.  In addition, the Court, upon motion of Aetna, dismissed Plaintiff's second claim for prejudgment interest under California Insurance Code § 10111.2 and third claim for discrimination under § 510 of ERISA.  Id.

Plaintiff and Unum have now filed cross-motions for judgment under Rule 52, which, for reasons explained below, are construed under Rule 56.  Dkt. 71, 77, 89, 91.[7]  Aetna has filed a separate motion for summary judgment pursuant to Rule 56, or, in the alternative, for judgment pursuant to Rule 52.  Dkt. 72.  Plaintiff does not directly address Aetna's motion, but states instead that his claims against Aetna arise only if the Court grants Unum's motion.  Pl.'s Resp. at 13-14.

---

[7] In support of his motion, Plaintiff submitted a declaration from his counsel, attached to which are excerpts from various medical treatises, Dkt. 79, and a declaration from Margaret Noble, Plaintiff's wife, regarding their financial difficulties, Dkt. 78.  Unum filed a motion to strike both declarations, arguing that the Court's review of Unum's termination of Plaintiff's benefits is limited to the administrative record.  Dkt. 90.  Finding good cause, the Court grants the motion to strike.

1  II.    **STANDARD OF REVIEW**

2          An individual who is denied benefits under his or her employer's ERISA-governed

3  benefits plan may challenge such decision in federal court.  See 29 U.S.C. § 1132(a)(1)(B);

4  Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008).  Judicial review of an

5  administrator's decision is de novo, unless the plan affords the administrator or fiduciary

6  discretionary authority to determine eligibility for benefits or to construe the terms of the

7  plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Where such

8  discretion is conferred, the administrator's decision is reviewed for abuse of discretion.

9  Conkright v. Frommert, 559 U.S. 506, 512 (2010).

10         Under the abuse of discretion standard, a federal court is not free to substitute its

11  judgment for that of the plan administrator, unless the decision is arbitrary or capricious.

12  Jordan v. Northrop Grumman Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir.2004),

13  overruled on other grounds by Abatie v. Alta Health & Life Ins. Co. , 458 F.3d 955, 969

14  (9th Cir. 2006).  "An ERISA administrator abuses its discretion only if it (1) renders a

15  decision without explanation, (2) construes provisions of the plan in a way that conflicts

16  with the plain language of the plan, or (3) relies on clearly erroneous findings of fact."

17  Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan, 410 F.3d 1173, 1178 (9th

18  Cir. 2005).

19         Here, the Plan expressly grants Unum discretionary authority to make eligibility

20  determinations and to construe its terms.  AR 164 ("The Plan, acting through the Plan

21  Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to

22  make benefit determinations under the Plan. . . . .  Benefit determinations include

23  determining eligibility for benefits and the amount of any benefits, resolving factual

24  disputes, and interpreting and enforcing the provisions of the Plan."); see also UA-POL-

25  LTD-11.  In view of this delegation of authority, the Court finds that the abuse of discretion

26  standard applies to this case.  See Conkright, 559 U.S. at 512.

27         Where the relevant plan documents confer discretion upon the administrator to make

28  benefit determinations, Rule 56 applies.  See Harlick v. Blue Shield of Cal., 686 F.3d 699,

706 (9th Cir. 2012).[8]  "In the ERISA context, 'a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'"  Id. (citation omitted).

## III.   UNUM

### A.   ENFORCEABILITY OF THE SELF-REPORTED LIMITATION

#### 1.   2005 California Settlement Agreement

Plaintiff contends that Unum is precluded under the terms of a 2005 California Settlement Agreement ("CSA") from relying on the self-reported limitation.  Dkt. 77 at 15. In 2005, Unum and related entities previously entered into the CSA in response to unfair practices claims brought by the State of California Insurance Commissioner.  CSA-001.  In Section IV of the California Settlement Agreement, Unum agreed to various changes in its claims handling policies, including no longer utilizing the self-reported limitation provision in "California Contracts."  That section states:

> Respondents shall discontinue application of the "self-reported condition" provisions in California Contracts, which has permitted Respondent to characterize certain disabling conditions as "self-reported" (e.g., pain, limited range of motion, weakness), while the Respondent accepted only objective test results to support disability, thus limiting payment of certain benefits under the "self-reported conditions" policy provision, and discontinue inclusion of "self-reported conditions" provisions in any California Contract issued after the date set forth in Section V.

CSA-011 (emphasis added).  The agreement further provides that "'California Contract' for the purposes of Section IV . . . of this CSA shall mean a policy of disability income insurance issued by a Respondent which is subject to the jurisdiction of and approved by the Department."  Id.

---

[8] De novo review on ERISA benefits claims is typically conducted as a bench trial under Rule 52.  Lee v. Kaiser Found. Health Plan Long Term Disability Plan, 812 F. Supp. 2d 1027, 1032 n.2 (N.D. Cal. 2011) (Illston, J.).

1    The Unum Policy issued to Allin specifies that it is governed by Pennsylvania law.

2    AR 126.  Despite this, Plaintiff argues that the policy is a California Contract "because it is

3    subject to the jurisdiction of the California Department of Insurance" within the meaning of

4    California Insurance Code § 10270.90.  Pl.'s Mot. at 16.  More specifically, Plaintiff avers

5    that § 10270.90 grants the Department of Insurance jurisdiction over any group disability

6    policy "if it provides coverage within this state."  Id.  However, § 10270.90 merely requires

7    the Commissioner to approve of the terms of any group disability policies issued or

8    delivered in California.  See Horn v. Provident Life & Acc. Ins. Co., 351 F. Supp. 2d 954,

9    960 (N.D. Cal. 2004).  There are no provisions in § 10270.90 pertaining to the

10   "jurisdiction" of the Insurance Commissioner.  The Court thus concludes that the Plan is

11   not a California Contract and that the 2005 CSA does not preclude Unum from asserting

12   the self-reported limitation in this case.

## 2.    Clear and Conspicuous

14   Plaintiff next asserts that the self-reported limitation is unenforceable on the ground

15   that it is not "clear and conspicuous" in the Plan documents.  The Ninth Circuit has

16   incorporated the reasonable expectations doctrine into ERISA which requires that

17   exclusions from coverage be "clear, plain, and conspicuous."  Scharff v. Raytheon Co.

18   Short Term Disability Plan, 81 F.3d 899, 905 (9th Cir. 2005).  Under this doctrine, "[a]n

19   insurer wishing to avoid liability on a policy purporting to give general or comprehensive

20   coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in

21   such a fashion as to make obvious their relationship to other policy terms, and must bring

22   such provisions to the attention of the insured."  Saltarelli v. Bob Baker Grp. Med. Trust,

23   35 F.3d 382, 387 (9th Cir. 1994) (internal quotations and citation omitted); Babikian v. Paul

24   Revere Life Ins. Co., 63 F.3d 837, 842 (9th Cir. 1995) (holding that plaintiff had no

25   reasonable expectation that benefits would vest where contrary language was clear, plain,

26   and conspicuous).

27   The Court finds no merit to Plaintiff's assertion that the self-reported limitation is

28   neither clearly nor conspicuously disclosed in the Plan.  The basic operation of the Plan is

set forth in the section entitled, "LONG TERM DISABILITY BENEFIT

INFORMATION," which is listed in the table of contents.  AR 000139.  The text of that

section is set forth in question and answer format.  The questions logically progress from

the eligibility requirements for benefits to the cessation of benefits.  Immediately following

the question, "**WHEN WILL PAYMENTS STOP?**" the Plan clearly discloses the self-

reported condition limitation:

> **WHAT DISABILITIES HAVE A LIMITED PAY PERIOD UNDER YOUR PLAN?**
>
> Disabilities, due to sickness or injury, which are primarily based on **self-reported symptoms**, and disabilities due to **mental illness** have a limited pay period up to 24 months.

AR 000145 (emphasis in orig.).  All highlighted terms in the Policy, including "self-

reported symptoms" are defined in the "GLOSSARY" of the Policy, as follows:

> **SELF-REPORTED SYMPTOMS** means the manifestation of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine.  Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in the ears, dizziness, numbness and loss of energy.

AR 000157 (emphasis in orig.).  The Court finds nothing inconspicuous or unclear

regarding the Policy's disclosure of the twenty-four month limitation applicable to Self-

Reported Symptoms.

 Plaintiff complains that the limitation is not listed in the Policy table of contents,

located in a part of the Policy where it "would be expected," displayed in bold or

highlighted, and requires a reading of multiple parts of the Policy.  Dkt. 77 at 20.  As

support, Plaintiff erroneously relies on Patterson v. Hughes Aircraft Company, 11 F.3d 948

(9th Cir. 1993).  Dkt. 77 at 15.  In that case, the court held that a benefit limitation for

"mental disorder" was "ambiguous" because the Plan did not define the term "mental

disorder" or provide any examples of covered or excluded mental conditions.  Id. at 950.

Here, Plaintiff does not contend (nor would the Court be inclined to find) that the definition

of Self-Reported Symptoms or the applicable twenty-four month benefit limitation are

1    ambiguous.  Unlike <u>Patterson</u>, the issue here is whether the limitation is clearly and plainly

2    disclosed, not whether the Policy provisions at issue are ambiguous.  The Court therefore

3    rejects Plaintiff's assertion that the self-reported limitation is neither clearly nor

4    conspicuously disclosed in the Policy.

5         Having concluded that Unum is not precluded from relying on the self-reported

6    limitation in connection to Plaintiff's LTD benefits claim, the Court now addresses whether

7    Unum abused its discretion in rendering its benefits determination.

8         **B.    EVALUATION OF UNUM'S DECISION**

9         **1.    Failure to Properly Consider the SSA's Decision**

10        Plaintiff alleges that Unum failed to adequately consider the SSA's decision, which

11   granted disability benefits based on vertigo with hearing loss.  <u>See</u> Pl.'s Opp. at 1.  As an

12   initial matter, an administrator is not bound by an SSA award.  <u>See</u> <u>Montour v. Hartford</u>

13   <u>Life & Acc. Ins. Co.</u>, 588 F.3d 623, 635 (9th Cir. 2009) ("ERISA plan administrators are

14   not bound by the SSA's determination."); <u>see also</u> <u>Black & Decker Disability Plan v. Nord</u>,

15   538 U.S. 822, 823 (2003) (noting "critical differences" between benefits determinations

16   under the SSDA and ERISA).  At the same time, the Ninth Circuit has held that a plan

17   administrator cannot simply ignore the SSA's decision to award disability benefits, and that

18   the failure to adequately address such decision may constitute an abuse of discretion.

19   <u>Salomaa v. Honda Long Term Disability Plan</u>, 642 F.3d 666, 679 (9th Cir. 2011)

20   ("Evidence of a Social Security award of disability benefits is of sufficient significance that

21   failure to address it offers support that the plan administrator's denial was arbitrary, an

22   abuse of discretion"); <u>Montour</u>, 588 F.3d at 635 ("complete disregard for a contrary

23   conclusion without so much as an explanation raises questions about whether an adverse

24   benefits determination was 'the product of a principled and deliberative reasoning

25   process.'") (citations omitted).

26        In <u>Montour</u>, the Ninth Circuit explained that "[o]rdinarily, a proper acknowledgment

27   of a contrary SSA disability determination would entail <u>comparing and contrasting</u> not just

28   the definitions employed but also the medical evidence upon which the decisionmakers

relied." Montour, 588 F.3d at 636 (emphasis added); see also Salz v. Standard Ins. Co., 380 Fed.App'x 723, 724 (9th Cir. June 1, 2010) ("A proper administrative process will meaningfully discuss a claimant's award of social security benefits . . . [and] analyz[e] the distinctions between the basis for the two awards"). Here, Unum acknowledged the SSA's decision, but failed to address it in the manner required by Montour.

In connection with Plaintiff's SSA claim, the ALJ considered his claim of vertigo with hearing loss by referring to § 2.07 of the Commissioner's Listing of Impairments. Section 2.07 provides that "[d]isturbance of labyrinthine-vestibular function (including Meniere's disease) as being "characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.07 (emphasis added). To establish this condition, there must be "[d]isturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests" and "[h]earing loss established by audiometry." Id. The ALJ found that Plaintiff's complaint of vertigo with hearing loss was documented by objective medical criteria. AR 817. In particular, he cited videonystagmography (VNG) testing which documented mild unilateral weakness of the right peripheral labyrinth, and audiometric testing which confirmed a mild high-frequency unilateral sensory type hearing loss in the left ear. Id. The ALJ noted that these results were later confirmed by vestibular screening tests performed by an audiologist at UCSF who noted that Plaintiff had abnormal fixation suppression with caloric nystagmus, "suggestive of a central vestibular dysfunction." AR 817, 514.

In its decision terminating Plaintiff's LTD benefits, Unum made no effort to address the ALJ's findings, let alone compare and contrast the applicable definitions or the medical evidence presented. See Montour, 588 F.3d at 636. Instead, Unum merely attempted to distinguish the SSA's decision on the grounds that it was predicated upon a different disability and did not involve application of the self-reported limitation. Unum's decision states:

> According to the information in the Social Security Disability file, the primary diagnosis was noted to be "Vertiginous Syndromes and Other Disorders of Vestibular System" and the secondary diagnosis was noted to be "Affective/Mood

1
2
3
4

Disorders."  Your client's Long Term Disability benefits have
been paid under the 24 month mental illness/self-reported
symptoms limitation for the condition of <u>vertigo</u>.  While he may
continue to be eligible for benefits from Social Security, please
note that our policy, unlike Social Security, contained a
limitation for self-reported conditions.

5   AR 1534-35 (emphasis added).

6        Unum's contention that the ALJ's findings are inapposite because the SSA and LTD

7   claims are predicated on different conditions lacks merit.  The SSA decision clearly states

8   that Plaintiff's disability benefits claim was based on "vertigo with hearing loss." AR 814.

9   That is the same condition complained of in Plaintiff's LTD benefits claim.  AR 111.  As

10  such, it was error for Unum to summarily dismiss the SSA's findings based on Unum's

11  mischaracterization of Plaintiff's claimed disability.[9]  In addition, the fact that SSA benefit

12  claims are not subject to the self-reported limitation does not excuse Unum's failure to

13  compare and contrast the SSA's decision with Plaintiff's LTD benefits claim.  Similar to

14  the self-reported limitation, the ALJ was required to assess whether there was objective

15  medical evidence to support Plaintiff's claim that he was suffering from a disabling

16  condition.  The ALJ made specific findings, with citations to Plaintiff's medical records,

17  that his condition was sufficiently verified.  Accordingly, Unum should have, but failed to,

18  set forth a meaningful analysis which compared and contrasted the ALJ's decision.  Such

19  failure weighs heavily in favor of finding that Unum abused its discretion.  <u>E.g.</u>, <u>Letvinuck</u>

20  <u>v. Aetna Life Ins. Co.</u>, 439 Fed.Appx. 585, 586-87 (9th Cir. June 22, 2011) ("In sum,

21  evidence of a Social Security award of disability benefits is of sufficient significance that

22  failure to address it offers support that the plan administrator's denial was arbitrary, an

23  abuse of discretion.").

24  _____

25        [9] In its opposition, Unum states that its inquiry "focused on whether there were
examinations or diagnostic tests that validated plaintiff's symptoms and where there is a
26  physical cause to plaintiff's symptoms," and that the SSA "did not perform the same
analysis or apply the same standard."  Def.'s Opp'n at 3.  Perhaps so, but the fact remains
27  that Unum failed to discuss these specific, purported distinctions in its decision.  In an
ERISA action for benefits, the Court reviews the plan administrator's actions, not the post
28  hoc justification of its counsel.

1

2.      **Application of Self-Reported Limitation**

2       Setting aside Unum's failure to adequately address the SSA's decision, the Court has

3   concerns with respect to Unum's application of the self-reported limitation.  According to

4   Unum, Plaintiff's complaints of vertigo, tinnitus, and hearing loss are entirely self-reported,

5   and are among the types of self-reported conditions expressly set forth in the self-reported

6   limitation.  See Def.'s Mot. at 1, 22.[10]  Unum further contends that the "purported

7   conditions giving rise to [Plaintiff's] claimed disability were not verifiable using tests,

8   procedures or clinical examinations standardly accepted in the practice of medicine."  Id. at

9   22; AR 157.  The Court is not so sanguine.

10      The Ninth Circuit has not yet specifically addressed the contours of the self-reported

11  limitation in ERISA disability benefits cases.  Other courts, however, have uniformly

12  concluded that the self-reported limitation applies only to the method used to diagnose the

13  sickness or injury that led to disability claim, and not the symptoms of the claimed

14  disability itself.  Weitzenkamp v. Unum Life Ins. Co. of Am., 661 F.3d 323, 330-31 (7th

15  Cir. 2011); Chronister v. Baptist Health, 442 F.3d 648, 656 (8th Cir. 2006); Eisner v.

16  Prudential Ins. Co. of Am., No. C12-1238 JST, 2013 WL 3946003, *5 (N.D. Cal. July 29,

17  2013); Rutherford v. Scene 7 Inc. Long Term Disability Plan, No. C 07-06426 WHA, 2008

18  WL 2788191, *6 (N.D. Cal. July 18, 2008).

19      Unum argues that Plaintiff's conditions, principally his vertigo, are self-reported,

20  because there is no objective medical evidence to substantiate his reported condition.  The

21  Court disagrees.  Medical providers, including Drs. Loos and Grewal, found that the Dix-

22  Hallpike maneuver was positive and indicated vertigo.  AR 209, 445, 514.  As noted above,

23  Dix-Hallpike is a "[t]est for eliciting paroxysmal vertigo and nystagmus in which the

24  patient is brought from the sitting to the supine position with the head hanging over the

25  examining table and turned to the right or left; vertigo and nystagmus are elicited when the

26

27      [10] As cited above, the self-reported limitation states, in part that:  "Examples of self-
    reported symptoms include but are not limited to headaches, pain, fatigue, stiffness,
28  soreness, ringing in ears, dizziness, numbness and loss of energy."  AR 157.

head is rotated toward the affected ear."  STEDMAN'S MED. DICTIONARY 1050 (28th ed.

2006); see also Jennings v. Avon Prods., 2013 WL 183738, *3 (Del. Super. Ct. Jan. 4,

2013) ("Dr. Townsend did not administer any inner ear diagnostic tests because he felt they

would be redundant, having already objectively found vestibular problems via the positive

Hallpike's maneuver.").[11]

Unum does not specifically address whether the Dix-Hallpike maneuver is an

objective measure of vertigo or vestibular issues, but claims that Dr. Grewal found the

positive result "to be insignificant as he did not diagnose [P]laintiff with BPPV [benign

paroxysmal positional vertigo]."  Unum Opp'n at 7 (citing AR 206, 207, 444).  A review of

the citations to the record provided by Unum does not support that assertion.  The records

at AR 206 and AR 207 are from Dr. Grewal, but they make no mention of the Dix-Hallpike

maneuver.  However, later in his report, Dr. Grewal specifically concluded that:  "Hallpike

maneuver . . . was positive with causing his vertigo [and] horizontal nystagmus to the

right . . . ."  AR 209.  As for the document at AR 444, it is not by Dr. Grewal, but instead

appears to be an undated, handwritten note generated by the California Ear Institute, which

states:  "no Meniere's, no labyrinthitis, no BPPV."  There is no explanation of these

apparent diagnoses nor is there any mention of the Dix-Hallpike maneuver.  It also is

unclear who generated this note.[12]

Unum also contends that the opinions of Plaintiff's treating and consulting medical

providers are equivocal in that none has precisely identified the origin of Plaintiff's

conditions or "definitively diagnosed" Plaintiff as having Meniere's disease.  Def.'s Opp'n

at 4-8.  Unum is correct that no physician has actually diagnosed Plaintiff has having

---

[11] The Court also notes that audiometric evaluations and testing by multiple
providers confirmed that Plaintiff was suffering from hearing loss in his left ear and
tinnitus.  AR 445, 513.  Testing at UCSF revealed "abnormal fixation suppression with
caloric nystagmus . . . suggestive of a central vestibular dysfunction," while other tests
confirmed Plaintiff's dizziness, disorientation and loss of balance.  AR 514, 884.

[12] Dr. Grewal is not among the six physicians listed on the note who appear to
comprise the California Ear Institute.  None of the boxes next to the six physicians have
been checked.  AR 444.

1  Meniere's disease; however, a number of them have diagnosed Plaintiff as "possibly"

2  having the disease and none has expressly ruled it out.  AR 445, 3302, 3350.  Nevertheless,

3  whether or not Plaintiff actually has Meniere's disease or has received a definitive

4  diagnosis for a particular condition is inapposite.  Rather, the self-reported limitation does

5  not require a definitive diagnosis.  It only requires that the presence of the condition is

6  verified. AR 157.  In other words, although the cause of the vertigo may not be known, the

7  fact that Plaintiff suffers from vertigo has been verified by physicians.  That there may be

8  differing medical opinions regarding the genesis of Plaintiff's vertigo does not ipso facto

9  mean that there is no objective medical evidence to verify his claim of vertigo or that the

10  condition is one that is "diagnosed primarily based on self-reported symptoms . . . ."

11  Weitzenkamp, 661 F.3d at 330.

12      In sum, Unum's failure to adequately address the SSA's decision to award benefits,

13  coupled with its failure to take into account the verifiable medical data substantiating

14  Plaintiff's condition, militate in favor of a finding that Unum abused its discretion.  The

15  Court therefore GRANTS Plaintiff's motion and correspondingly DENIES Unum's motion

16  for summary judgment.

17          **3.    Disability Plus Claim**

18      Unum's policy provides a "Disability Plus" benefit, which adds an additional 20%

19  of pre-disability income in benefits when a disabled insured loses "the ability to safely and

20  completely perform 2 activities of daily living without another person's assistance or verbal

21  cueing" suffers from "a deterioration or loss in intellectual capacity and need[s] another

22  person's assistance or verbal cueing for [his or her] protection or the protection of others."

23  UA 1789.

24      In his motion, Plaintiff contends that despite submitting evidence to Unum regarding

25  his inability to perform at least two activities of daily living without assistance, Unum

26  improperly denied his request for Disability benefits.  Pl.'s Mot. at 2-4, 11-12; AR 969,

27  1605-607, 3382.  Notably, Unum's opposition does not respond to Plaintiff's arguments

28

regarding his claim for Disability Plus benefits.[13]  Thus, based on the record presented, and Unum's failure to respond, the Court finds that Unum abused its discretion in denying Plaintiff's claim for Disability Plus benefits.

### 4. Remedy

The Court finds that Unum abused its discretion by failing to properly address the SSA's decision and applying the incorrect standard to assess the applicability of the self-reported limitation.  In light of those conclusions, the Court finds that remand is appropriate.  See Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan, 85 F.3d 455, 461 (9th Cir. 1996) ("[R]emand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination.").  Although Plaintiff requests that the Court award him benefits at this juncture, he provides no compelling authority or argument establishing that such an award is more appropriate than a remand to the administrator.

Before remanding the matter, however, the Court orders the parties to return to Magistrate Judge Donna Ryu for a further settlement conference. Prior to the completion of briefing on the instant motions, the Court referred the parties to Judge Ryu for a mandatory settlement.  Because of their diametrically opposed perspective on the case, the parties jointly requested that the Court withdraw its reference.  The Court granted this request. Although the core issues in the case have now been resolved, the Court nonetheless finds it in the parties' interests to attempt to resolve their dispute on mutually acceptable terms, before they invest further time and resources on remand and/or further litigation.  The Court will therefore stay the remand order pending the parties' participation in a further mandatory settlement conference with Magistrate Judge Ryu.

---

[13] Unum's motion does not mention Plaintiff's Disability Plus, but does briefly dispute the severity of his symptoms, claiming that they "make no sense at all" in light of the "absence of physical findings."  Unum Mot. at 25.  However, Unum provides no support for these conclusory assertions.

**1**   **IV.   AETNA**

**2**       Aetna, the insurer of the Dell employee benefit plan, separately moves for summary

**3**   judgment on the ground that Plaintiff was employed by Allin when his disability arose in

**4**   2008—prior to Dell's acquisition of Allin in 2009—and therefore was never "actively at

**5**   work" as required under the terms of the Dell Plan.  In addition, Aetna argues that because

**6**   Plaintiff applied for and received disability benefits from Unum pursuant to the Allin Plan,

**7**   any judgment against Aetna would amount to double recovery for Plaintiff.  Plaintiff only

**8**   briefly responds to Dell's motion.

**9**       Dell acquired Allin on January 9, 2009.  Aetna 11.  On the same date, Aetna issued a

**10**   group policy to Dell to provide LTD benefits to eligible employees, pursuant to the terms of

**11**   the Dell Plan.  Aetna 1150, 1152.  The Dell Plan specifies that it "does not pay benefits for

**12**   a disability that starts before coverage starts under this plan."  Aetna 1153.  In addition, the

**13**   Dell Plan includes an "Active Work Rule," which provides that, "if the employee is ill or

**14**   injured and away from work on the date your coverage would take effect, the coverage will

**15**   not take effect until you return to active full-time work for one full day."  Aetna 1156.  The

**16**   term "actively at work" means "performing the regular duties of your job on a full time

**17**   basis" based upon "hours you are normally scheduled to work."  Aetna 1171.  The Dell

**18**   Plan further states that it will not pay benefits where a claimant is receiving or eligible to

**19**   receive benefits under a prior disability plan.  Aetna 1164.

**20**       The Dell Plan confers discretionary authority upon Aetna, as its administrator, "to

**21**   determine whether and to what extent eligible employees and beneficiaries are entitled to

**22**   benefits and to construe any disputed or doubtful terms under this Policy."  Aetna 1251.

**23**   Plaintiff does not dispute that his disability arose prior to the effective date of the Dell Plan,

**24**   he was not actively working at Allin after the Dell acquisition, or that he had received

**25**   benefits under a prior disability plan, i.e., the Allin Plan.  Instead, Plaintiff argues that at a

**26**   "LTD Blitz meeting," Aetna waived application of the "Active at Work" rule.  Pl.'s Mot. at

**27**   17.  This contention fails, as the waiver only applied to health benefits, not LTD benefits.

**28**   Aetna 593, 843-45, 849.

Similarly, Plaintiff's reliance on <u>Lessard v. Applied Risk Management</u>, 307 F.3d 1020 (9th Cir. 2002) is misplaced.  In <u>Lesser</u>, the plaintiff was on disability leave and receiving benefits when she and the benefits plan were terminated following an asset sale of her employer.  The asset-sale agreement provided that only those employees who were actively employed by the employer on the date of the sale would be covered under the benefits plan without interruption.  The Ninth Circuit held asset-sale agreement "facially discriminate[d] against employees who were on disability, workers' compensation, and any other form of extended leave [by] explicitly excepting from its separate schedule for conditional transfer any employee who was absent from work due to vacation, holiday, or personal reasons."  <u>Id.</u> at 1025-26.  Here, there was no termination of benefits as a result of Dell's acquisition of Allin Consulting nor was the Allin Plan terminated.  Rather, the Dell Plan merely provides that an employee is not eligible for benefits where the employee is receiving or eligible to receive benefits under another plan.  <u>Lesser</u> thus has no application to this case.

Based on the record presented, the Court finds that Aetna did not act arbitrarily or capriciously in denying Plaintiff's claim for LTD benefits under the Dell Plan.  <u>See</u> <u>Conkright</u>, 559 U.S. at 512.  Aetna's motion for summary judgment, which is for all intents and purposes unopposed by Plaintiff, is GRANTED.

## V.   **CONCLUSION**

For the reasons discussed above,

IT IS HEREBY ORDERED THAT:

1.      Unum's motion to strike is GRANTED;

2       Unum's motion for summary judgment is DENIED;

3.      Plaintiff's motion for summary judgment is GRANTED IN PART;

4.      Aetna's motion for summary judgment is GRANTED; and

5.      This matter (as to Plaintiff and Unum) is REFERRED to Magistrate Judge Donna Ryu for a further mandatory settlement conference to take place within sixty (60) days of the date this Order is filed, or within such time as mutually agreed upon by

Magistrate Judge Ryu and the parties.  In the event the action does not settle, the Court will enter final judgment in this action and remand it to Unum for further consideration of Plaintiff's LTD benefits claim in manner consistent with this Court's ruling.

      6.    All pending matters shall be terminated.

IT IS SO ORDERED.

Dated:  9/30/14

SAUNDRA BROWN ARMSTRONG
United States District Judge